IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EDNA GUAJARDO, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> vs. ) <br> ) <br> CARAVAN INGREDIENTS, INC. ) <br> d/b/a CORBION, ) <br> ) <br> *Defendant*. ) <br> ) | Case No. |

# COMPLAINT

Plaintiff, Edna Guajardo, for her claims against Defendant, Caravan Ingredients, Inc., d/b/a Corbion ("Corbion"), alleges as follows:

### PARTIES

1. Caravan Ingredients, Inc., doing business as "Corbion," is a corporation with its headquarters and principal place of business in Lenexa, Kansas.

2. Corbion's registered agent in Kansas is Registered Agent Solutions, Inc., 2101 SW 21st Street, Topeka, Kansas 66604.

3. Ms. Guajardo is a former Corbion employee. She resides in South Carolina.

### JURISDICTION & VENUE

4. This Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. § 1331 because Ms. Guajardo's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206 *et seq*. The Court has supplemental jurisdiction over Ms. Guajardo's state-law claims under 28 U.S.C. § 1367 and also has diversity jurisdiction under 28 U.S.C. § 1332.

5. This Court has personal jurisdiction over Corbion because Corbion resides in this district.

6. Venue is appropriate in this district because Corbion resides in this district.

## GENERAL ALLEGATIONS

7. Corbion provides food ingredient solutions to businesses in the food industry, including well-known fast-food restaurant customers.

8. Corbion is an "employer" covered by and subject to the laws set forth in the Claims below.

9. Corbion has more than 500 employees.

10. Ms. Guajardo was employed by Corbion for nearly 20 years. She held the position Senior Account Manager.

11. Corbion paid Ms. Guajardo a base salary as well as commissions and bonuses.

12. In addition, Corbion provided Ms. Guajardo with various employee benefits, including paid vacation time and reimbursement of business expenses.

13. Ms. Guajardo's commissions, business expenses, and earned vacation time constitute "wages" under the applicable state wage payment law.

14. During her employment with Corbion, Ms. Guajardo provided superior service to Corbion and its clients.

15. Ms. Guajardo performed at or above Corbion's legitimate and reasonable expectations throughout her employment, including the time of her discriminatory and retaliatory termination.

16. Ms. Guajardo received outstanding performance evaluations and praise for her work, including the time leading up to her termination.

17. Ms. Guajardo procured substantial business for Corbion, for which she received substantial praise from Corbion's senior managers, including its President of Sustainable Food Solutions, Vice President, and Vice President of Bakery Sales.

18. In 2020, Ms. Guajardo's percentage sales increase was greater than any other Senior Account Manager.

19. In 2020, Ms. Guajardo's supervisor, Mr. Rosario Sanfilippo, recognized her performance when Corbion awarded her a "2H Bonus."

20. In her 2020 performance review, Ms. Guajardo received an "overachieved" rating.

21. In 2020, Ms. Guajardo was given a pay raise.

22. In February 2021, Corbion's Vice President of Bakery Sales, Scott Bieker, congratulated Ms. Guajardo for her stellar work for a major client, saying, "I think I would have given up long ago. Thank you for recognizing the teams as you always do."

23. Ms. Guajardo was Corbion's only female Senior Account Manager in the specialty bakery division. All of her similarly situated colleagues were men.

24. Corbion paid Ms. Guajardo less than Corbion's younger, male Account Managers who performed the same kind of work, in the same conditions, that required the same skill, effort, and responsibility.

25. Corbion promoted some of Ms. Guajardo's male peers even though her performance was equal to or better than her male colleagues.

26. Mr. Sanfilippo included Ms. Guajardo's male counterparts, but did not include her, on product-pricing discussions.

27. In May 2021, Mr. Sanfilippo reduced a product price on one of Ms. Guajardo's accounts without telling her, which adversely affected Ms. Guajardo's accounts.

28. Corbion imposed unique requirements on Ms. Guajardo related to price quotes without imposing the same requirement on her male colleagues.

29. In the Spring of 2021, Mr. Sanfilippo began baselessly singling out Ms. Guajardo for alleged "insubordination," which culminated in her termination after she complained that Mr. Sanfilippo was discriminating against her because of her gender.

30. On April 2, 2021, a month after she received her "overachieved" performance rating, Mr. Sanfilippo issued her a written warning for alleged "insubordination" (which Ms. Guajardo disputed) based on events that supposedly occurred four months before her performance review.

31. Ms. Guajardo prepared a written response to Mr. Sanfilippo's allegations and requested to have additional discussions, but Mr. Sanfilippo dismissed her response.

32. On April 15, 2021, Ms. Guajardo expressed her concerns about Mr. Sanfilippo to her second-level supervisor, Mr. Bieker.

33. On May 4, 2021, Mr. Sanfilippo issued Ms. Guajardo another written warning based on bogus allegations that she had not followed instructions.

34. Ms. Guajardo responded to and specifically refuted Mr. Sanfilippo's allegations to Corbion's human resources department.

35. In June 2021, when Ms. Guajardo sought to expand Corbion's business with a client, whose account she had previously won, Mr. Sanfilippo refused to allow her to meet with the client's representatives.

36. The same month, Ms. Guajardo complained to Mr. Sanfilippo that he was excluding her from pricing discussions but including her male colleagues.

37. Ms. Guajardo further complained to Harry Noppers, Corbion's Secretary and Vice President, that Mr. Sanfilippo was imposing rules on her that were not imposed on her male colleagues, and that these rules were arbitrary and constantly changing.

38. Ms. Guajardo also complained that she had asked both Mr. Sanfilippo and Human Resources for a copy of the specific allegations made against her by Mr. Sanfilippo, but they refused to share this information with her.

39. On July 6, 2021, Ms. Guajardo told Mr. Noppers that she was preparing a response to Mr. Sanfilippo's vague allegations to the extent she could, given the lack of specificity. She told Mr. Noppers that she believed Mr. Sanfilippo's treatment toward her was based on her gender.

40. On July 7, 2021, Ms. Guajardo sent Mr. Noppers another email and emphasized that she believed Mr. Sanfilippo's disparate treatment was because of her gender.

41. On July 8, 2021, Mr. Noppers responded to Ms. Guajardo by saying that Corbion would communicate with her through the SpeakUp platform.

42. Ms. Guajardo did not receive a further response from Corbion through the SpeakUp platform.

43. On July 9, Corbion terminated Ms. Guajardo's employment.

44. On information and belief, Corbion replaced Ms. Guajardo with a less-experienced, less-qualified male employee.

45. Corbion failed to pay Ms. Guajardo in excess of $120,000 it owes her for sales commissions earned from January 1 to June 30, 2021.

46. Corbion failed to reimburse Ms. Guajardo for business expenses incurred for work-related travel and office supplies prior to her termination of employment.

47. Corbion failed to pay Ms. Guajardo for earned but unused vacation time that accrued before her termination of employment.

## CLAIMS

### Count I – Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e *et seq*.
### Gender Discrimination

48. Ms. Guajardo incorporates all other paragraphs of this Complaint as if fully set forth herein.

49. Corbion is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

50. Ms. Guajardo filed a timely complaint with the EEOC.

51. The EEOC issued Ms. Guajardo a Right-to-Sue letter and she is filing this complaint within 90 days of her receipt of that letter.

52. Ms. Guajardo's gender was a determining factor in numerous adverse employment actions, including but not limited to false written warnings; pay disparity between Ms. Guajardo and similarly situated male colleagues; the imposition of special rules not applicable to her similarly situated male colleagues; and, ultimately, her termination.

53. Corbion did not take those actions with respect to Ms. Guajardo's similarly situated male colleagues, and Corbion replaced Ms. Guajardo on at least one of her accounts with a younger, less-experienced male.

54. But for her sex, Ms. Guajardo would not have faced the adverse employment actions listed above.

55. Corbion's discrimination against Ms. Guajardo was intentional, malicious, and recklessly indifferent to Ms. Guajardo's rights.

56. Corbion's conduct violated Title VII, Ms. Guajardo has suffered damages as a result of Corbion's conduct, and Corbion is liable to Ms. Guajardo under Title VII.

### Count II – Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e *et seq.*
### Retaliation

57. Ms. Guajardo incorporates all other paragraphs of this Complaint as if fully set forth herein.

58. Before Corbion terminated her employment, Ms. Guajardo complained about gender discrimination on several occasions.

59. After Ms. Guajardo complained about gender discrimination, Corbion issued her written warnings for false reasons and ultimately terminated her employment.

60. Ms. Guajardo's complaints were a determining factor in the adverse action; but for her complaints, her employment would not have been terminated.

61. Corbion's retaliation against Ms. Guajardo was intentional, malicious, and recklessly indifferent to Ms. Guajardo's rights.

62. Corbion's conduct violated Title VII, Ms. Guajardo suffered damages as a result of Corbion's conduct, and Corbion is liable to Ms. Guajardo under Title VII.

### Count III – Equal Pay Act
### 29 U.S.C. § 206(d)

63. Ms. Guajardo incorporates all other paragraphs of this Complaint as if fully set forth herein.

64. Corbion is an "employer" within the meaning of the Equal Pay Act.

65. Ms. Guajardo was the only female Account Manager in the specialty bakery division at Corbion.

66. Ms. Guajardo's similarly situated male Account Managers performed work under the same or similar working conditions as Ms. Guajardo's.

67. Ms. Guajardo's similarly situated male colleagues held positions that were substantially equal, required substantially equal skill, effort, and responsibility, and performed under similar working conditions.

68. A centralized group at Corbion set compensation and made and oversaw compensation decisions impacting Ms. Guajardo and her similarly situated male colleagues.

69. Corbion paid Ms. Guajardo less than her similarly situated male colleagues who also worked as Account Managers.

70. The EPA covers all forms of compensation, including salary, commissions, bonuses, vacation pay, reimbursement for travel expenses, and benefits.

71. Corbion failed to provide Ms. Guajardo with equal compensation compared to her similarly situated male colleagues, including but not limited to her salary, commissions, vacation pay, and reimbursement of travel and other business expenses.

72. Corbion knew or showed reckless disregard for its obligations under the Equal Pay Act.

73. Corbion's conduct violated the Equal Pay Act, Ms. Guajardo has suffered damages, and Corbion is liable to Ms. Guajardo under the Equal Pay Act.

### Count IV – South Carolina Wage Payment Act ("SCWPA")
### S.C. Code § 41-10-50

74. Ms. Guajardo incorporates all other paragraphs of this Complaint as if fully set forth herein.

75. Corbion is an "employer" within the meaning of the SCWPA.

76. Since September 2020, Ms. Guajardo resided in South Carolina and worked out of her house in South Carolina.

77. At the same time, Ms. Guajardo's supervisor, Mr. Sanfilippo, also lived in South Carolina.

78. Ms. Guajardo earned and is entitled to commissions in excess of $120,000 that have never been paid to her.

79. Ms. Guajardo has outstanding business expenses for work-related travel and other expenses, as well as earned but unused vacation time, that Corbion was required to pay Ms. Guajardo, but have never been paid to her.

80. Ms. Guajardo's commissions, unreimbursed business expenses, and earned but unused vacation time constitute wages under the SCWPA.

81. Corbion willfully and without justification refused to pay Ms. Guajardo the commissions owed to her.

82. Corbion willfully and without justification refused to reimburse Ms. Guajardo for outstanding business expenses owed to her.

83. Corbion willfully and without justification refused to pay Ms. Guajardo earned but unused vacation time owed to her.

84. There is no bona fide dispute over the wages that Corbion owes Ms. Guajardo.

85. Corbion's conduct violated the SCWPA, Ms. Guajardo has suffered damages, and Corbion is liable for unpaid wages, treble damages, attorneys' fees, and other damages to Ms. Guajardo under the SCWPA.

**Count V – Maryland Wage Payment and Collection Law ("MWPCL")**
**Md. Code Lab. & Empl. § 3-505**

86. Ms. Guajardo incorporates all other paragraphs of this Complaint as if fully set forth herein.

87. Ms. Guajardo brings this claim under the MWPCL in the alternative.

88. Though Ms. Guajardo resided and worked out of her home in South Carolina, she spent a significant amount of time servicing clients in Maryland.

89. Corbion is an "employer" within the meaning of the MWPCL.

90. Ms. Guajardo's commissions, unreimbursed business expenses, and earned but unused vacation time constitute wages under the MWPCL.

91. Corbion's conduct, as set forth above in this Complaint, violated the MWPCL, Ms. Guajardo has suffered damages, and Corbion is liable for unpaid wages, treble damages, attorneys' fees, and other damages to Ms. Guajardo under the MWPCL.

**Count VI – Breach of Contract**

92. Ms. Guajardo incorporates all other paragraphs of this Complaint as if fully set forth herein.

93. There was a valid contract between Ms. Guajardo and Corbion to pay Ms. Guajardo commissions, reimburse her for business expenses including work-related travel and office supplies, and to pay out earned but unused vacation upon termination of employment.

94. The contract is supported by sufficient consideration.

95. Ms. Guajardo at all times performed in compliance with the contract.

96. Corbion breached the contract by failing to pay Ms. Guajardo her unpaid commissions, reimburse her for all business expenses including work-related travel and office supplies, and pay out earned but unused vacation upon termination of employment.

97. Ms. Guajardo has suffered damages as a result of Corbion's breach of contract and Corbion is liable for damages because of its conduct.

## Count VII – Unjust Enrichment

98. Ms. Guajardo incorporates all other paragraphs of this Complaint as if fully set forth herein.

99. Through her employment at Corbion, Ms. Guajardo conferred a benefit on Corbion through her work and generating millions of dollars in sales revenue.

100. Corbion understood and appreciated that benefit through its agreement to pay Ms. Guajardo a commission for the Corbion sales revenue for which Ms. Guajardo was responsible.

101. Corbion has retained all of the sales revenue that Ms. Guajardo generated between January 1, 2021 and June 30, 2021 under circumstances that make it inequitable for Corbion to retain the commissions that it agreed to pay Ms. Guajardo for that sales revenue.

102. Similarly, Corbion has retained Ms. Guajardo's earned vacation time, and it has received the benefit of the unreimbursed business expenses that she incurred on behalf of Corbion, under circumstances that make it inequitable for Corbion to retain the earned vacation time and withhold reimbursement of the business expenses.

### DAMAGES AND RELIEF

103. Ms. Guajardo has suffered and continues to suffer damages as a result of Defendants' discrimination, retaliation, unequal and discriminatory pay, failure to pay wages, breach of contract, unjust enrichment, and other unlawful conduct, as alleged above.

104. Ms. Guajardo is entitled to the following damages and relief, which are asserted both cumulatively and in the alternative:

   a) back pay, lost benefits, and other economic loss resulting from Corbion's violations of Title VII, including the termination of her employment;

   b) reinstatement or, in the alternative, front pay;

   c) back pay and other economic loss relating to her unequal and discriminatory pay;

   d) payment for unpaid wages, including commissions, earned vacation, and unreimbursed business expenses;

   e) actual damages in the form of lost employment opportunities, time away from work, attorneys' fees and other out-of-pocket expenses and/or costs, all other direct and indirect economic loss resulting from Corbion's unlawful actions;

   f) compensatory damages;

   g) treble damages for all unpaid wages;

   h) liquidated damages;

   i) punitive damages;

   j) civil penalties;

   k) interest;

   l) costs, expenses, and attorneys' fees; and

   m) any and all other damages and relief allowed by law or deemed to be just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all claims.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

By: */s/ Boyd A. Byers*
    Boyd A. Byers, #16253
    Morgan E. Geffre, #28116
    Foulston Siefkin LLP
    1551 N. Waterfront Pkwy. Ste. 100
    Wichita, Kansas 67206-4466
    316.267.9716
    316.567.6345
    bbyers@foulston.com
    mgeffre@foulston.com

    Scott C. Nehrbass, #16285
    Foulston Siefkin LLP
    7500 College Blvd Ste. 1400
    Overland Park, Kansas 66210
    316.267.9716
    snehrbass@foulston.com